PITTMAN, Judge.
The State Department of Revenue (“the Department”) appeals from a summary judgment entered by the Jefferson Circuit Court (“the trial court”) in favor of Omni Studio, LLC (“Omni”), in a dispute between the Department and Omni over Omni’s alleged duty to collect and remit sales tax in connection with Omni’s business.
Introduction
Omni operates a photography business that provides photography services to clients that are, primarily, other businesses, such as advertising and marketing firms. According to one of Omni’s members, Omni provides “commercial photography for advertising, agencies and marketing companies to help provide imagery for [advertising] campaigns,” although *369 there is evidence indicating that Omni provides at least some photography services to noncommercial clients, such as wedding parties.
Generally speaking, Alabama law requires persons selling tangible personal property at retail to collect and remit sales tax based on a percentage of the gross proceeds resulting from the sales. Ala. Code 1975, § 40-23-2(1). In June 2013, in an effort to determine whether Omni had complied with Alabama’s sales-tax laws, the Department began auditing the business that Omni had conducted during the period from May 1, 2007, through May 31, 2013 (“the audit period”). It is undisputed that Omni had not remitted any sales tax during the audit period.
Pursuant to its audit, the Department concluded that Omni owed sales tax for various business transactions that it had conducted during the audit period. Specifically, the Department determined that Omni owed sales tax for “transactions such as: headshots, flat-rate photography sessions, digital studio photography, portraits, weddings and reception events.”[1] According to the Department, Omni owed sales tax for amounts it had charged for those transactions without deduction for charges that may have been for creative services, such as the designing and arranging of the subject matter of the photographs. The Department’s position is that, because such services ultimately culminate in the production of photographs that are transferred to Omni’s clients, charges for those services are taxable. That position is based in part on a Department regulation, which provides:
“(1) The gross proceeds accruing from retail sales of photographs, blueprints and other similar árticles are subject to sales or use tax, without any deduction for any part of the cost of production....
[[Image here]]
“(2) Any fee for sitting, consultation or any other activity that is done in preparation of the final product, even when separately stated, is a part of the labor or service cost and cannot be deducted from the gross proceeds accruing from retail sales. Therefore, gross proceeds, as referenced in paragraph (1) include, but are not limited to consultation fees, sitting fees, and all other fees when such fees are charged in conjunction with the sale of photographs, blueprints, and other items sold by the retailer as provided in paragraph (1). Any reasonable and customary retainer fee separately stated on the photographer’s contract that is both nonrefundable and may not be credited toward any purchase of photographs is not taxable. The separate fee is unrelated to the production of the finished photographs.”
Ala. Admin. Code (Dep’t of Revenue), Rule 810-6-1-.119.
The Department eventually issued a final assessment against Omni for just over $27,000, which amount included sales tax allegedly due, interest, and penalties. Pursuant to § 40-2A-7(b)(5)b., Ala.Code 1975, Omni appealed from the Department’s final assessment to the trial court. Omni and the Department each filed motions for a summary judgment. The trial court denied the Department’s motion, granted Omni’s motion, and set aside the Department’s final assessment. The Department appealed.
*370 Standard of Review
Both the Department and Omni agree that the standard of review this court should apply in this case is the standard applicable to the review of a summary judgment.
“ ‘ “In reviewing the disposition of a motion for summary judgment, ‘fen appellate court] utilizefe] the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was ‘entitled to a judgment as a matter of law.’ Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the non-movant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that fen appellate court] must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
“ ‘Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997). It has also been observed that “where the facts are not in dispute and we are presented with pure questions of law, [the] standard of review is de novo.” State v. American Tobacco Co., 772 So.2d 417, 419 (Ala.2000) (citing Ex parte Graham, 702 So.2d 1215 (Ala. 1997), and Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994)).’ ”
State Dep’t of Revenue v. Union Tank Car Co., 974 So.2d 1024, 1026-27 (Ala.Civ.App. 2007) (quoting Carlisle v. Golden Rod Feed Mill, 883 So.2d 710, 711-12 (Ala.Civ.App. 2003)).
Discussion
“Section 40-23-2(l)[, Ala.Code 1975,] levies a sales tax on persons ‘engaged or continuing within this state, in the business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character.’ ” State Dep’t of Revenue v. Kennington, 679 So.2d 1059, 1060 (Ala.Civ.App.1995). In a case applying § 40-23-2(1), Ala.Code 1975, this court acknowledged that our supreme court “has defined tangible personal property as ‘something that can be seen, felt, handled, sold commercially and has physical substance.’” Association of Alabama Prof'l Numismatists, Inc. v. Eagerton, 455 So.2d 867, 869 (Ala.Civ.App.1984) (quoting State v. Advertiser Co., 257 Ala. 423, 429, 59 So.2d 576, 580 (1952)). See also § 40-1-1(9), Ala.Code 1975 (defining “personal property,” for purposes of Title 40 of the Alabama Code, as “[a]ll things other than real property”).
The Department asserts that Omni sells tangible personal property to its clients in the form of photographs. There is no dispute that photographs are, for purposes of this appeal, tangible personal property. In support of its motion for a summary judgment, however, Omni argued to the trial court that its transfer of photographs *371 to its clients is merely incidental to the provision of nontaxable services and, therefore, does not constitute a taxable sale of personal property.
The amount of sales tax that a seller of tangible personal property owes is calculated as a percentage of “gross proceeds of sales.” § 40-23-2(1). “Gross proceeds of sales” is defined, in part, as “[t]he value proceeding or accruing from the sale of tangible personal property ... without any deduction on account of ... labor or service cost ... or any other expenses whatsoever....” Ala. Code 1975, § 40-23-1(a)(6). As noted, the Department has adopted a regulation providing that the proceeds from the transfer of photographs are taxable without deduction for amounts attributable to “sitting, consultation or any other activity that is done in preparation of the final product.” Rule 810-6-1-.119.
As Omni correctly asserts, however, notwithstanding that the gross proceeds of a sale include charges for “labor [and] service cost,” it has been established that some transfers of tangible personal property are considered merely incidental to the nontaxable sale of services and, therefore, are not themselves taxable. It has been said that,
“if the transaction is essentially one for service, the fact that some materials are used as an incident to such service, and consumed in the using, does not render it a sale of tangible property within the act. But, where the aim and end of the transaction is the passing of a tangible article from one to the other for the latter’s use or consumption, the fact that service or materials, or both, have been put into the article, or that it is useful only to the party who receives it, does not remove such business from the scope of the [sales tax] act.”
Long v. Roberts & Son, 234 Ala. 570, 577, 176 So. 213, 219 (1937) (Bouldin, J., concurring specially). See also Crutcher Dental Supply Co. v. Rabren, 286 Ala. 686, 691, 246 So.2d 415, 419 (1971) (suggesting that “the preparation and production of a deed or a will or a lengthy brief by a lawyer for a client” is not the “manufacture of the instrument for sale” and would not be subject to sales tax); and Haden v. McCarty, 275 Ala. 76, 78, 152 So.2d 141, 142 (1963) (“[T]he transfer of dentures and other prosthetic devices from a dentist to his patient is not a sale within the meaning of the [Sales Tax] Act. It is ... a mere incident to the professional treatment rendered by dentists”).
In Haden, our supreme court acknowledged that the proposition that a transfer of personal property incidental to the provision of nontaxable services is not itself taxable has been applied as part of the “learned profession” doctrine. 275 Ala. at 78, 152 So.2d at 142-43 (“ ‘Dentists are not traders in commodities engaged in a merchandising business. A dentist is a practitioner of one of the true “learned professions,” like unto a physician or surgeon.’ ” “ ‘The fashioning and furnishing of dentures, crowns, inlays, bridges, and similar medical [prosthetic] devices, by a dentist, incidental to his professional care and treatment of his patient, is not a retail sale of tangible personal property under the Alabama Sales Tax Act.’” (quoting the trial court’s judgment in Haden)). The idea that incidental transfers of personal property are not taxable, however, has been extended to taxpayers that some might not consider to be “learned professionals.”
As Omni pointed out in support of its summary-judgment motion, this court, in State v. Harrison, 386 So.2d 460 (Ala.Civ. App.1980), considered the issue whether Douglas Harrison, who was “engaged in the business of rendering public relations services through an advertising agency,” *372 id. at 460, was required to remit sales tax for the sale of “catalogues and brochures” that he created for his clients. Id. at 461. As part of .Harrison’s business, Harrison “advise[d] and consulted] a client or customer as to [the client’s] public relations and advertising needs” and, through application .of Harrison’s creative talent and skill, designed catalogues and brochures “to be used by clients in displaying products or merchandise.” 386 So.2d at 460. The court also pointed out that the cata-logues and brochures “ha[d] no value except for those for whom the materials were designed.” Id. at 461. Analogizing the catalogues and brochures to the dentures involved in Haden, supra, this court determined that Harrison’s transfer of tangible personal property to his clients was merely incidental to the rendering of professional services and was, therefore, not taxable. 386 So.2d at 461.[2]
The proposition that some transfers of personal property are only incidental to the provision of services and, therefore, are not taxable has been extended even further. Specifically, Omni referred the trial court to State v. Kennington, 679 So.2d 1059 (Ala.Civ.App.1995). In that case, this'court determined that'the transfer by Dale Kennington, a portrait artist, of painted portraits to her clients did not constitute taxable sales of personal property because those transfers were, like the transfers of catalogues and brochures involved in Harrison, merely incidental to the sale of the artist’s creative services. 679 So.2d at 1061. Omni argues that there is no meaningful distinction between the services and personal property Harrison and Kennington provided to their clients and the services, and property that Omni provides to its clients.
Anthony Rodio, who is one of the members of Omni and serves as Omni’s production- manager, submitted an affidavit in support of Omni’s motion for a summary judgment. Rodio described Omni as a “commercial advertising production studio” that operates in the “commercial” or “media” photography industry. Rodio asserted in his affidavit that “[commercial photography is primarily a production service provided to business entities, most often to advertising agencies and magazine publishers,” and he testified during his deposition that the majority of Omni’s clients are advertising and marketing agencies. Ro-dio further averred in his affidavit that,
,“[a]s a commercial advertising production studio, Omni’s professionals .-use their talent, expertise, and experience, in consultation with- their clients, to gather the necessary resources to produce images (both still and video images) that fit a particular commercial need.
' “,.. Omni consults with its clients on imaging, sets up’the production parameters, and works with its clients through processing and editing so that, in the end, the images or videos produced fit within the business uses, advertising *373 campaigns, websites, magazines, or newspaper layouts of their clients in a professional and seamless manner.
“... Omni performs a wide range of services from helping its clients design advertising campaigns or magazine layouts to hiring and managing assistants, models, stylists, and other necessary team members to choosing locations, setting.up lighting, reviewing and processing images and videos to helping edit copy and much more.”
Rodio also averred that Omni charges its clients based on the time and resources spent by Omni in providing services rather than based on the number, size, or type of photographs actually produced. According to Rodio, Omni’s charges are payable regardless of whether photographs are,delivered to its clients and regardless of whether photographs are ultimately produced at all.[3]
In granting Omni’s summary-judgment motion, the trial court stated that Omni’s clients purchase Omni’s “skill and experience” and that Omni’s transfer of personal property to its clients.is merely incidental to Omni’s professional services. Accordingly, the trial court determined that Omni’s business was analogous to -the businesses at issue in Harrison and Kenning-ton and that, like Harrison and Kenning-ton in those cases, Omni is not engaged in the taxable sale of personal property.
In contrast to Omni’s position and the trial court’s conclusion, the Department asserts that, “[l]ike the majority of states, Alabama has long rejected the argument that a photographer renders a professional service, and instead, Alabama law finds the sale of photographs to be a retail sale subject to the levy of sales tax.” In support, the Department does-not point to any decisions of this court or our supreme court. Rather, the Department relies.on three .decisions issued by its own administrative-law division on appeals from sales-tax assessments. See generally § 40-2A-7(b)(5)a., Ala.Code 1975 (allowing for an administrative appeal from a sales-tax assessment).
In Thigpen Photography, Inc. v. State, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. S. 95-127 (Aug. 30, 1995) (Opinion and Preliminary Order), an administrative-law judge (“ALJ”) considered the sales-tax liability of a professional photographer. Although the ALJ in Thigpen appears to have rejected the broad proposition that a photographer’s transfer of photographs is merely incidental to the provision of creative services and should not be taxed at all, the ALJ did opine that a photographer’s provision of “photographic services,” which were described as “consulting with the customer, and deciding when, where and how to shoot” photographs, was not taxable. Thus, although the ALJ concluded that charges for the “labor and services necessary to actually prepare and develop the photograph[s]” should be taxed, the ALJ appears to have concluded that at least some of a photographer’s creative services should not be taxed.
We also note that the ALJ’s rejection in Thigpen of the proposition that a photographer’s delivery of photographs is merely incidental to the nontaxable provision of creative services was based in part on a *374 previous administrative opinion that has since been abrogated. Specifically, the ALJ in Thigpen stated:
“In State v. Kennington, Admin. Docket S. 93-308, decided August 8, 1994, a portrait artist argued that sales tax was not due on the sale of her portraits because she was providing an intangible professional service, and the portrait itself was only incidental to the service. The taxpayer’s argument was rejected as follows:
‘“The courts have ruled that the sale of tangible personal property by those engaged in a “learned profession” is incidental to the professional services provided and thus not subject to sales tax. “Learned profession” [is] defined by the courts [as] (some) doctors and lawyers. See, Lee Optical Company of Alabama v. State, Board of Optometry, [288 Ala. 338,] 261 So.2d 17 [ (1972) ].
“T agree with Justice Jones’ dissent in Alabama Board of Optometry v. Eagerton, 393 So.2d 1373, at 1378 [ (Ala.1981) ], in which he questions the relevancy of the “learned profession” dichotomy for purposes of determining the applicability of sales tax. However, recognizing that the courts have created an exception for learned professions, with all due respect painting has not and should not be recognized as a learned profession. The Taxpayer undoubtedly uses great skill in her work, but if the use of skill or talent in creating a product qualifies a vocation as a learned profession, then all artisans such as master furniture makers, clothing designers/makers, etc. that also use skill and originality in designing or making their product would also qualify.’ ”
Regardless of the merits of the above-stated rationale relied upon by the ALJ in Thigpen, that rationale was not embraced by this court when it later issued its decision in Kennington, which held that the portrait artist’s transfer of portraits was merely incidental to the sale of the artist’s services.
In Smith v. State, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. S. 05-1240 (Nov. 17, 2006) (Opinion and Preliminary Order), also relied upon by the Department, the primary issue was whether photographs that had been transferred to customers by digital means, as opposed to physical copies, constituted tangible personal property. As a subissue, however, the ALJ in that matter did opine that a professional photographer’s transfer of photographs to commercial customers (whether digitally or otherwise) was not merely incidental to the photographer’s provision of professional services. The administrative opinion in Smith quoted Thig-pen in support of its reasoning as follows:
“ ‘The Taxpayer certainly uses skill and creativity in his business, but that skill and creativity goes into making the tangible photograph, which is sold at retail and sales tax is due thereon. Unlike a lawyer’s brief or a will, or a prescription prepared by a physician, or the catalogs and brochures in Harrison, which are only means by which professional services are provided, the final product provided by the Taxpayer is the tangible photograph.’ ”
As noted, however, the ALJ in Thigpen had concluded that a photographer’s provision of services whereby he or she “de-cidles] when, where and how to shoot” are not taxable. Indeed, the ALJ in Smith also determined that the photographer involved in that proceeding was not liable for sales tax on amounts he had charged for his time in attending functions and actually taking photographs. It is clear that Thig-pen and Smith, although rejecting the *375 broad proposition that the transfer of photographs is merely incidental to the nontaxable provision of professional services, did recognize that a professional photographer provides creative services that may not be taxable.
In Robinson v. State, Op. of Dep’t of Revenue, Admin. Law Div., Docket No. S. 13-807 (Sept. 8, 2014) (Opinion and Preliminary Order), upon which the Department also relies, an ALJ determined the extent of a professional wedding photographer’s sales-tax liability. In what may have been a departure from the idea that services provided by a photographer in determining “when, where and how to shoot” photographs may not be taxable, the ALJ in Robinson determined that fees charged for the photographer’s “labor in planning, shooting and editing” photographs were taxable because those services were “necessary steps in producing the finished [photographs].” The ALJ in Robinson instructed the Department to notify “professional photographers in Alabama that they are liable for sales tax on all sitting and other fees they may charge for planning, arranging, taking, editing, and otherwise preparing photographs for sale.”
In cases of doubt, tax statutes are to be construed in favor of the taxpayer. Harrison, 386 So.2d at 461. Although the interpretation of a statute by an administrative agency that is charged with enforcement of the statute is persuasive, Alabama Dep’t of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 866 (Ala.Civ.App.2008), that interpretation is not binding on this court. Britnell v. Alabama State Bd. of Educ., 386 So.2d 1148, 1149 (Ala.Civ.App.1980). This court is not writing on a clean slate, and we are not convinced by the Department’s attempts to distinguish Harrison and Kennington. Like the trial court, we see no meaningful difference between the services that Omni provides and the services that were at issue in those cases, and we have not been asked to revisit their holdings. “Stare decisis commands, at a minimum, a degree of respect from [an appellate court] that makes it disinclined to overrule controlling precedent when it is not invited to do so.” Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 926 (Ala.2002). Accordingly, we conclude that the trial court’s judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur,
MOORE, J., concurs specially.

. The' Department does not provide any details regarding the exact makeup of these categories of allegedly taxable transactions, nor does it discuss the percentage of Omni’s business that is attributable to each category.

. This court also noted in Harrison that Harrison's services included the filming of motion pictures, the taldng of photographs, and the creation of recordings for television and radio programs. 386 So.2d at 460. Contrary to Omni's assertion in this case, it is not clear that this court considered in Harrison whether Harrison's delivery of photographs, separate ' and apart from catalogues and brochures, constituted the taxable sale of tangible personal property. Id. at 461 (“The sole issue presented by this -appeal is whether a transfer by [Harrison] to a client of catalogues and brochures is a 'sale’ of tangible personal property within the meaning of the sales tax act.”), Although it may be a reasonable assumption, this court did not-expressly state in Harrison whether the photographs that Harrison created were the same photographs that eventually were incorporated into the cata-logues and brochures he transferred to his clients.

. Omni initially argued to the trial court that it does not “sell” photographs at all because it does not transfer ownership of photographs to its clients but, rather, simply grants its clients a license to use the images in the photographs. Omni, however, appears to have backed away from that position to an extent and, instead, argues that it is irrelevant whether Omni transfers ownership of photographs because, Omni asserts, any such transfers are merely incidental to the provision of professional services.