On Application for Rehearing
The opinion of November 9, 1995, is withdrawn and the following opinion is substituted therefor.
The plaintiffs, Billy Farmer and his wife Judy Farmer, appeal from a summary judgment entered in favor of the defendant Hypo Holdings, Inc., on the Farmers' claim seeking a judgment declaring that a note and mortgage on their residence was void and unenforceable.
 I.
On June 20, 1984, the Farmers contracted with Alexander Development Corporation ("Alexander") to construct a house on land owned by Judy Farmer. The $36,500 construction price of the house was financed by Alexander, to be repaid by the Farmers over a period of 20 years at 14% interest. The Farmers signed a promissory note, which was secured by a mortgage from the Farmers to Alexander. Alexander assigned the note and mortgage to Goldome Credit Corporation; Goldome thereafter assigned the mortgage to Hypo Holdings. Hypo Holdings, like Alexander, was not licensed under *Page 389 
Ala. Code 1975, § 5-19-22(a), a section of the consumer finance "Mini-Code," to make consumer loans or to take assignments of consumer credit contracts.
In 1992, the Farmers became delinquent in their payments on the note, and they have made no payments since then. A notice of foreclosure was advertised in October 1993. The Farmers responded by suing Hypo Holdings, claiming that because Alexander and Hypo Holdings were not licensed under the Mini-Code the common law rule of Derico v. Duncan, 410 So.2d 27
(Ala. 1982), rendered the note and mortgage void and unenforceable. The Farmers also alleged that the mortgage was unenforceable because, they alleged, their signatures on it were not properly witnessed or acknowledged.[1]
On December 9, 1994, the trial court entered a summary judgment in favor of Hypo Holdings on the Farmers' claim that the note and mortgage were unenforceable. The trial court ruled that neither Alexander nor Hypo Holdings was required to be licensed under the Mini-Code. The trial court also found no merit in the Farmers' claim regarding their signatures on the mortgage. The court made the summary judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The Farmers appealed.
 II.
In order to enter a summary judgment, the trial court must determine that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Bussey v. John Deere Co.,531 So.2d 860 (Ala. 1988). This case was filed after June 11, 1987; accordingly, the "substantial evidence rule" applies to the ruling on the motion for summary judgment. Ala. Code 1975, §12-21-12; Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). Thus, in order to defeat a properly supported motion for summary judgment, the nonmovants had to present in support of their position substantial evidence creating a genuine issue of material fact. Betts v. McDonald's Corp.,567 So.2d 1252 (Ala. 1990). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). However, in reviewing a summary judgment, this Court is bound to review the evidence in a light most favorable to the nonmovant or nonmovants, in this case the Farmers. Thetford v.City of Clanton, 605 So.2d 835 (Ala. 1992).
 III.
As enacted, the Mini-Code provided no specific remedy to the consumer/debtor for a creditor's failure to be licensed. Under the common law rule of Derico, the promissory note and the mortgage would be held void and unenforceable. However, as noted in the special writings directed to this Court's recent "no opinion" affirmance in Johnson v. Alabama Power Co.,664 So.2d 877 (Ala. 1995), the rule of Derico was abrogated when the legislature amended Ala. Code 1975, § 5-19-11, and created a specific statutory remedy. See Ala. Acts 1990, No. 90-384. As amended, § 5-19-11(b) provides that a debtor may recover only for the actual damage sustained as a result of the creditor's violation of a Mini-Code requirement. Johnson, supra; In reCrotzer, 147 B.R. 252 (Bankr. N.D.Ala. 1992).
 A.
We must first determine whether Hypo Holdings was required to be licensed under § 5-19-22(a), a part of the Mini-Code. Section 5-19-22(a) states:
 "No creditor shall engage in the business of
making consumer loans or taking assignments of consumer credit contracts without first having obtained a license for each location from the administrator. . . ."
(Emphasis added.)
The trial court ruled that the contract between Alexander and the Farmers was an "installment sales contract" rather than a "consumer credit contract" and, thus, that the licensing provision of the Mini-Code did *Page 390 
not apply. However, the licensing requirement of the Mini-Code does not contemplate a distinction between an "installment sales contract" and a "consumer credit contract." The word "installment" is used only in § 5-19-18, a section regarding consumer credit transactions of $1,000 or less. Instead of the word "installment," the Mini-Code sometimes uses the term "scheduled payment." See, e.g., §§ 5-19-4 and -7. Moreover, the term "scheduled payment" is not used in antithesis to "consumer credit contract," and the terms are not mutually exclusive. Rather, the "installment sales contract" described by the trial court is just one type of a "consumer credit contract."
Hypo Holdings, a New York corporation, argues that it is exempt from the licensing requirement discussed above for two reasons: (1) because it is not a "creditor" as that term is defined in the Mini-Code, and (2) because it has no business office, agents, or employees in Alabama. We discuss each of these arguments in turn.
 1.
Section 5-19-1(3), a part of the Mini-Code, reads, in relevant part:
 "CREDITOR. Such term refers only to creditors who regularly extend credit or arrange for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services or otherwise."
Hypo Holdings argues that it is not a creditor and, thus, that the Mini-Code's licensing provision is not applicable to it. It has referred this Court to the affidavit of a company representative stating that Hypo Holdings does not make loans or extend credit in Alabama or any other state. Although the Farmers argue that Hypo Holdings is a Mini-Code "creditor," they have offered no evidence that it "regularly extend[s] credit or arrange[s] for the extension of credit for which the payment of a finance charge is required." Accordingly, there is no question of material fact as to whether Hypo Holdings is a Mini-Code creditor. Thus, we conclude that, as a matter of law, the licensing provision of § 5-19-22(a) is not applicable to Hypo Holdings.
 2.
Hypo Holdings refers this Court to a letter written in 1973 by Alabama's attorney general advising that out-of-state entities are not subject to the Mini-Code's licensing requirements. However, an attorney general's opinion is only advisory; it is not binding on this Court and does not have the effect of law. See, e.g., Ellis v. State Nat'l Bank of Alabama,434 F.2d 1182 (5th Cir. 1970), cert. denied, 402 U.S. 973,91 S.Ct. 1661, 29 L.Ed.2d 137 (1971); Smith v. Madison CountyComm'n, 658 So.2d 422 (Ala. 1995).
Hypo Holdings also argues that the State Banking Department has relied upon and followed the attorney general's opinion for over two decades. It is true that an interpretation placed on a statute by an administrative agency charged with its enforcement will be given great weight and deference by a reviewing court. Alabama Metallurgical Corp. v. Alabama PublicService Comm'n, 441 So.2d 565 (Ala. 1983); Sadie v. Tyson,539 So.2d 1066 (Ala.Civ.App. 1988); Director of State Dep't ofIndustrial Relations v. Winston County Comm'n, 468 So.2d 177
(Ala.Civ.App. 1985). Notwithstanding this rule of construction, where the language of a statute is plain this Court will not blindly follow an administrative interpretation, but will interpret the statute to mean exactly what it says.McCullar v. Universal Underwriters Life Ins. Co., [Ms. 1930246, September 29, 1995] ___ So.2d ___ (Ala. 1995); Director of StateDep't of Industrial Relations, supra.
However, in this case, the attorney general's 1973 advisory opinion, and the State Banking Department's similar interpretation, were followed by the legislature's reenactment of § 5-19-22 in 1983. Acts 1983, No. 83-747, p. 1244, § 1. We have previously stated that because the legislature is presumed to be aware of how an administrative agency has interpreted a statute, the subsequent reenactment of the statute without material change is an indication that the legislature approves the agency's interpretation. Robinson v. City of Montgomery,485 So.2d 695 (Ala. 1986); Hamm v. Proctor, 281 Ala. 54,198 So.2d 782 (1967); Jones v. Phillips, *Page 391 279 Ala. 354, 185 So.2d 378 (1966). Although in such circumstances the agency's interpretation is not binding on this Court, see Sand Mountain Bank v. Albertville Nat'l Bank,442 So.2d 13 (Ala. 1983), we consider it especially persuasive. Accordingly, we hold that § 5-19-22(a) does not require creditors with no business locations in Alabama, such as Hypo Holdings, to be licensed under the Mini-Code.
 B.
We must next determine the effect Alexander's failure to be licensed under the Mini-Code has on Hypo Holdings. The following clause is contained in the consumer credit contract at issue:
"NOTICE
 "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."
Thus, under this contract the Farmers could raise any claim against Hypo Holdings that they could raise against Alexander, such as Alexander's failure to have a Mini-Code license.
However, it is clear that Alexander was not required to be licensed under the Mini-Code to make a consumer credit sale to the Farmers or any other consumers. The plain language of §5-19-22(a) indicates that only creditors who make consumer loans[2] or take assignments of consumer credit sales contracts must be licensed. See Derico, supra (differentiating between the portion of the plaintiff's indebtedness representing a consumer loan and the portion representing a credit sale of goods and services). Moreover, even as enacted, the Mini-Code required only that creditors making consumer credit sales who were not licensed had to file a notification with the State Banking Department. Ala. Code 1975, §§ 5-19-27 and -28. However, the statutes imposing this limited consumer protection requirement were repealed by the legislature in 1982. Ala. Acts 1982, No. 82-521, p. 869, § 2. Thus, the Farmers have no claim against Hypo Holdings based on Alexander's failure to be licensed under the Mini-Code.
 IV.
The Farmers also contend that their mortgage is void and unenforceable because, they say, their signatures on that document were not properly acknowledged (notarized). Their arguments on this issue are twofold. First, they claim that a falsehood appears on the document because it purports to have been acknowledged in Jackson County before Henry Gilmore, while they state that the mortgage was not signed or acknowledged in Jackson County, nor before Henry Gilmore.
Regarding the issue of the acknowledgment of the Farmers' signatures on the mortgage, the trial court stated:
 "The Plaintiffs contend that the mortgage is invalid because it was not acknowledged in the Plaintiffs' presence. The notary public, Henry Gilmore, has, however, made an affidavit that the Plaintiffs executed the mortgage in his presence."
A certificate of acknowledgment on an instrument transferring an interest in real property is presumed correct, and the party contending it is invalid must demonstrate the invalidity by clear and convincing evidence. Central Bank of the South v.Dinsmore, 475 So.2d 842 (Ala. 1985); Henslee v. Henslee,263 Ala. 287, 82 So.2d 222 (1955); Lukes v. Alabama Power Co.,257 Ala. 590, 60 So.2d 349 (1952). Given this standard, the trial court correctly ruled that the Farmers did not meet their burden of proof.
 V.
The trial court correctly determined that there are no genuine issues of material fact and that Hypo Holdings is entitled to a judgment *Page 392 
as a matter of law. Thus, we affirm the judgment of the trial court.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
MADDOX, J., concurs in the result.
[1] The complaint also made other claims, but those other claims are not at issue in this appeal.
[2] See, e.g., Johnson v. Alabama Power Co, 664 So.2d 877
(Ala. 1995) (affirming a trial court's ruling that the Mini-Code's licensing provision, § 5-19-22(a), applied to a consumer credit transaction where consumers' purchases of heat pumps from "Alabama Power Company certified dealers" were financed through consumer loans by Alabama Power Company).